## THE DECATUR NATIONAL BANK
### v.
## MARTIN P. MURPHY ET AL.

1. BANKS—PAYMENT OF CHECK IN EXCESS OF DEPOSIT.—W'thout an especial arrangement to that effect, a bank is under no obligation to pay checks of its depositors in excess of their deposits.

2. COLLECTION OF CHECKS BY BANKS.—When a bank receives from a depositor a check upon another bank for collection, if the collection fails without fault of the bank receiving it for collection, the latter has the right to return the check and cancel the credit given to the depositor for the amount.

3. CUSTOM—IMMEDIATE EXAMINATION OF CHECKS RECEIVED ON EXCHANGE.—The evidence fails to prove the existence of a general and uniform custom among the bankers where this transaction occurred, to make immediate examination of checks brought in for exchange, and the return of such as are dishonered, and the court is of opinion that reasonable diligence in examination and notice of dishoner was had in this case.

APPEAL from the Circuit Court of Macon county; the Hon. C. B. SMITH, Judge, presiding. Opinion filed October 19, 1881.

Messrs. THORNTON & ELDRIDGE, and CLOKEY & MILLS, for appellant; that checks deposited with a bank and credited in a depositor's pass-book, in the absence of any special agreement, are taken for collection only, and upon a failure to collect, they may be returned and the credit cancelled, cited Morse on Banking, 388; Nat. Gold Bank v. McDonald, 51 Cal. 64; Boyd v. Emerson, 29 E. C. L. 184.

A check drawn on Saturday is properly presented on the following Monday: O'Brien v. Smith, 1 Black, 99; 2 Daniels on Neg. Inst. § 1590.

A check is never regarded as dishonored until the lapse of a reasonable time after payment may be legally demanded, and what is a reasonable time is a question of law for the court: Himmelanan v. Hotaling, 40 Cal. 111; Gough v. Staats, 13 Wend. 549; Morse on Banking, 280; Rickford v. Ridge, 2 Camp. 537.

Whatever knowledge a director has or ought to have offi-

cially, he has as a private individual: Morse on Banking, 131; Lyman v. U. S. Bank, 12 How. 225.

The mere detention of a bill for an unreasonable time by the drawee will not have the effect of an acceptance: Chitty on Bills, *296; Overman v. Hoboken City Bank, 2 Vroom, 558; Bellasis v. Hester, 1 Ld. Raymd. 280; Morse on Banking, 251; 2 Daniels' Neg. Inst. § 1619.

Even if an acceptance be written on a bill but obliterated before delivery, the acceptor is not bound: Cox v. Troy, 7 E. C. L. 163; 3 Kent's Com. 85; Story on Bills, 347; Chitty on Bills, 348; Irving Bank v. Witherald, 36 N. Y. 335.

A bank is not bound to pay an overdraft: Morse on Banking, 374; Munn v. Burch, 25 Ill. 35; 2 Daniel Neg. Inst. § 1597.

The bank cannot be regarded in default when no proper demand was made of the actual amount due: Downs v. Phœnix Bank, 6 Hill, 298; Johnson v. Farmer's Bank, 1 Hart, 117;. McEwen v. Davis, 39 Ind. 100.

Mr. H. Crea, for appellee.

McCulloch, J. Appellees sued appellant for a balance claimed to be due them on a bank deposit account, and recovered a judgment in the court below for $981.94, from which judgment this appeal is prosecuted. The controversy relates to the sum of $600, included in said judgment.

On the 20th day of November, 1880, appellees were doing business under the firm name of Murphy & Waggoner, and kept their bank deposits with appellant. On that day they received a check drawn by the firm of Blackman & Holmes upon J. Miliken & Co., another banking firm with whom Blackman & Holmes kept their deposits. The dispute in this case grows out of the alleged dishonor of this check by J. Miliken & Co.

It appears from the evidence that for a number of years there have been three banking-houses in the city of Decatur, including those already named. Between these banks there has grown up a usage, now claimed to have the force of a custom, for each one to receive on deposit from its own customers,

checks drawn upon each of the others by their respective depositors, and to make exchanges of checks and pay balances every business day about the hour of two o'clock, or between that hour and the close of business for the day. If checks are received after the exchanges have been made they are held until the next day, unless for some special reason they are presented sooner. If a check is dishonored, it is returned to the bank from which it came, and the money is paid in lieu of it. The usual hour for closing the banks is four o'clock in the afternoon.

After the exchanges had been made on Saturday, November 20th, appellees deposited the check in question with appellant and received credit therefor on their bank pass-book. On the Monday following a messenger from J. Millikin & Co. made the rounds of the banks for the purpose of making the exchanges. He delivered to appellant nineteen checks, and received the same number in return, there being a difference in favor of J. Millikin & Co. of a small sum, which appellant paid in cash. The check in question was one of those taken away by the messenger, and in the course of an hour or an hour and a half it was returned to appellant as a rejected check; appellant took back the check, paid J. Millikin & Co. the face of it in currency, and charged it back to appellees. Their right to do so is the only question involved in this case.

Blackman & Holmes were known to be engaged in a highly speculative and very hazardous course of dealing in grain, in connection with an institution known as the Chicago Public Produce Exchange, for which reason they were not permitted to overdraw their bank account with J. Millikin & Co. At the close of business, on the 20th of November, the balance to their credit was $190.65, but after banking hours they made a deposit of $2,990.62, and drew their check in favor of the Chicago Public Produce Exchange for the sum of $2.456, which sum was placed to its credit, leaving a balance in favor of Blackman & Holmes of $725.27. These matters were entered upon the books of J. Millikin & Co. as business transactions of the Monday following. On that day, and before the coming in of this check for $600, other checks of

Blackman & Holmes were paid, by which their balance in bank was reduced to $575.27.   Upon their being requested to do so, Blackman & Holmes failed to make up their deposits, so as to meet the check in question, and the same was returned by J. Millikin & Co. as a dishonored check.   It is conceded that under the circumstances Millikin & Co. were not bound to pay the check, as it exceeded the fund in bank against which it was drawn.   Without a special arrangement to that effect a bank is under no obligation to pay checks of its depositors in excess of their deposits.

It is further conceded that appellant took the check only as agent of appellees for its collection.   If therefore the collection failed without any fault of appellant, it had the right to cancel the credit given appellees for the amount of the check.   Morse on Banking, 2 Ed. 388.

It is further conceded that the law governing the presentation of the check, gave appellant the whole of the next business day after its receipt, to present it to J. Milliken & Co. for payment.   This having been done, appellant was guilty of no laches in its presentation.   Nor do we understand counsel for appellees to seriously controvert the proposition of law advanced by counsel for appellant, that where the custom of banks is to make exchanges throught a clearing house, or as in this case, by messengers going around and taking up the checks, such exchange of checks is not an absolute acceptance or payment thereof, but that each party is entitled to an opportunity of examining the accounts of its depositors, and of passing upon the validity of the check so received in exchange before the acceptance becomes absolute.

The question at issue, therefore, is whether or not J. Milliken & Co. either by actual acceptance of the check in question, as a good check, or by their failure to return it to appellant in due time according to an alleged custom of dealing between the banks at Decatur, are to be considered as having closed the transaction between themselves and appellant, so as to have enabled appellant to successfully prove payment of the check.

The question is not whether or not the check ought to have

been paid on presentation, but whether or not it is to be treated as actually paid; for it is a part of the custom if one is proved, for the bank having sent in a check for exchange, to pay the cash upon its return dishonored, and it has a right to do this although the check may have been wrongfully dishonored if it is returned in due season. But it must make use of all proper means of knowing whether or not it is a case where the custom requires the refunding of the money. While it is no doubt true that the *bona fide* holder of a check may retain it and insist upon its payment if the circumstances of the case entitle it to be paid, yet in this case no such duty devolved upon appellant. It had the check for collection only on account of appellees, and if it used due diligence for its collection and failed, it had the right upon giving appellees due notice of its dishonor, to surrender the check to them and to cancel the credit given them for its face value. No duty devolved upon appellant after its dishonor to inquire into the state of accounts between Blackman & Holmes, and J. Milliken & Co., to see whether or not the check ought to have been paid. It was sufficient for appellant to make due presentation of the check, and when that was done its whole duty in that regard was performed. Then if the check was actually dishonored by non-payment or non-acceptance, and duly returned according to the custom, appellant had the right to charge it back to appellees.

It is contended on the part of appellees that the custom of the banks requires, that upon return of the messenger making the exchanges, the checks brought in by him are to be immediately examined by the proper officer to ascertain if they are good. They further contend that this check with all the others brought in by the messenger was either examined and passed upon, or that it was accepted without question, placed with the other checks upon a spindle used for the reception of paid checks, and finally passed to the credit of appellant, on the exchange account. They further contend that after being actually accepted and paid, as before stated, this check was permitted to remain unquestioned on the paid check-spindle, until after the receipt of a telegram from Chicago, announcing the dishonor of a check of the Chi-

cago Public Produce Exchange, and that upon the receipt of this piece of information, J. Milliken & Co. sought to recall the payment already made, and to wrongfully throw this check back upon appellant or appellees.

There is no evidence of any examination of this check having been made prior to the receipt of the telegram, aside from the mere fact of its being upon the paid check spindle. In fact, the proof is that the examination of the check brought in by the messenger was in progress when the telegram was received. Counsel for appellees, however, lay much stress, in their argument, upon the fact of this check having been placed upon the paid check spindle, and of its remaining there, as they say for over an hour, and insist that this amounts to proof of its payment. We do not understand that the keeping of a paid check spindle, or any other contrivance for the reception or cancellation of paid checks, enters into the alleged custom, or any other business arrangements which the banks may have with each other. It is a mere matter of convenience with each bank, in the transaction of its own business, and has no reference whatever to the usage of exchanging checks. The fact of the check being upon the spindle might, according to circumstances, afford a presumption of its payment, but this at best would amount to a mere presumption, liable to be rebutted. In this case the proof is that in some way, not explained, this check, with the others brought in by the messenger, went upon the spindle before examination by the proper officer, and when examined it was found to be in excess of the deposits against which it was drawn. These facts, in connection with the circumstance that Blackman & Holmes were not allowed to overdraw their account, sufficiently negatives any presumption that might have arisen from the mere fact of the check having been placed upon the spindle. It appears that no one but the proprietors themselves could, under the circumstances, have placed it there as a paid check without a violation of duty. The actual acceptance and payment of the check in question is therefore not proved.

It is contended, however, that if there was no actual accept-

ance and payment of the check in question, that there was such a neglect on the part of J. Milliken & Co. as to amount to an acceptance and payment, according to the custom of the banks, and that for this reason appellant was not justified in taking back the check and paying the money to J. Milliken & Co. and in charging it back to appellees. It is argued that the custom required the *immediate* examination of the checks brought in by the messenger and the *immediate* return of those dishonored.

We have examined the evidence upon this point with care, and while we are not dissatisfied with the proof as to the existence of a custom prevailing among the banks at Decatur, the general outlines of which have already been given, yet we fail to see in it anything that would require such instantaneous action on the part of those charged with the duty, as contended for by counsel for appellees. There are but three banks in Decatur, and if any such requirement existed, there ought certainly to be great unanimity in respect thereto among the officers of these three banks.

There is no evidence that these banks have ever adopted a set of rules to guide them in the transaction of their business with each other. If they are to be bound by custom, the law requires certain things to make the custom binding. It must be reasonable, it must be established, it must be known, it must be general, and it must be uniform. 2 Pars. Cont. 53. It rests upon usage in the line of business to which it applies, and that usage must have become established to the extent of fixing the methods of transacting the business in the absence of a contract or other controlling circumstances; it must have become known either by actual experience, or by its continued existence for so long a time that the knowledge of it will be presumed; it must be general among all engaged in the same business in the place where it is said to prevail, and it must be uniform, or constantly observed in the same manner by those engaged in that business, as occasion may present itself. Ibid, notes.

The prevailing usage of making daily exchanges of checks, by banks doing business in the same locality is for the conve-

Decatur Nat. Bank v. Murphy.

nience of the public as well as for that of the banks, and when any one chooses to avail himself of its benefits he must also assume the risks incident thereto.   Appellees might have presented the check in question on the day on which it was drawn, and might possibly have received their money.   Had they presented it early on Monday morning of the following week, it would almost certainly have been paid.   But they chose to pass it through appellant's bank, according to the prevailing usage, and in so doing assumed the risk of its non-presentation until the hour for making exchanges on the following Monday, and any other risks incident to this usage.   2 Pars. on Cont. 229, etc.

In respect to the time when it was incumbent upon Milliken & Co. to pass upon the check, we find the officers and employes of the several banks, whose testimony is relied upon by counsel for appellees, to materially differ among themselves. One says the custom is to examine the checks immediately or soon after their receipt; another says the messenger immediate-ly has his checks examined to see if they are good; another says the practice is to examine them at once; another says the custom is to examine them right away, but not always; another says they are usually examined before they are put upon the spindle; while several others on appellant's side say they are allowed until the close of business for the day to determine whether the checks are good; all seem to agree that the dishonored checks must be returned on the same day they are presented; but aside from this, we fail to see that usage has established any fixed hour when exchanges are to be made, or at what length of time after they are made the checks must be passed upon and returned.

It is reasonable to suppose that diligence in such cases would be expected, but these bankers, nearly all of whom seem to have been examined as witnesses, fail to show any agreement in their understanding of the custom, if one exists.

If the usual method of doing business in these three banks had been for the person charged with this duty to drop all other business the moment the messenger arrived, and to address himself at once to the examination of these checks and

the accounts of their respective drawers, and if it had been the general understanding that unless this was done immediately the exchanges would be considered absolutely closed, there could have been little, if any, disagreement between the officers whose duty it was to attend to this very business. It seems to have been the usage to pay cash in lieu of dishonored checks whenever presented, but the evidence wholly fails to show any usage to the effect that unless they were returned within some very limited time after the exchanges were made, the drawees should be considered as having accepted them. A custom involving such important responsibilities should be clearly proved.

On the evening of the 22nd day of November, Waggoner, one of the appellees, appeared at appellant's bank and made a statement to the effect that the check would be attended to the next morning. In consequence of this statement the check was not charged back to appellees until the next day. On the morning of the 23d of November, Murphy, the other appellee, accompanied by his attorney, went to appellant's bank and had a conversation with Mr. Hill, its president, who, it is claimed, stated the check had been paid. In another conversation with one Troutman, it is said he made the same admission. On the morning of the 24th of November both of the appellees went to appellant's bank and demanded the whole sum they now claim, when another conversation took place with Mr. Hill.

In all these several conversations no mention is made of any violation of any custom of the bank on the part of Milliken & Co., but something appears to have been said by Mr. Hill, to the effect that the check had been treated as a paid check, because Milliken had admitted that it was on his paid check-spindle for three-quarters of an hour. These remarks seem to have been based upon the presumption that when a check has once found its way to the spindle, this is proof of its payment.

Waggoner was one of the directors of appellant, and acquainted with the usages of the banking business at Decatur. It occurred to him on the night of the 22nd that the check might have been in the bank of Milliken & Co. as a "stuck"

or paid check. Yet, on the morning of the 24th of November, when he and Murphy demanded a settlement, they gave as their only reason for declining to have the credit cancelled, that appellant had not used diligence in presenting the check in proper time. It seems to us under these circumstances, that if there had been even an understanding or supposition of the existence of any custom that checks received in exchange should be examined, and the bad ones returned at the earliest possible moment, some one would have heard something of it during these transactions.

It being admitted that Milliken & Co. had a right to examine the checks, to return those that were not good, and to receive the money in return therefor, in the absence of any controlling custom, we hold that under the law they must be allowed a reasonable time for that purpose. We do not find from the evidence the existence of a general and uniform usage prevailing among the banks at Decatur, which requires the immediate examination and return of dishonored checks, according to the rigid rule contended for by counsel for appellees.

The action of Milliken & Co. was reasonably diligent, as was that of appellant. Appellees had timely notice of the dishonor of the check. The exchanges were made not earlier than two o'clock. Upon the return of the messenger to Milliken & Co.'s bank, all the checks brought in by him were, in some way not explained, placed upon the paid check-spindle, where they remained from a half to one full hour, without being passed upon.

When examined, it was found that the account of Blackman & Holmes was short, and had been so before the presentation of this check. While this examination was going on, a telegram was received from Chicago, announcing that a check of the Chicago Public Produce Exchange, had been dishonored by a bank there. A messenger was immediately dispatched to Blackman & Holmes, demanding that they should make good their account or this check would be thrown out. Upon their failure to make good their account, the check was at once returned to appellant, and word was immediately sent by it to appellees. Upon return of the messenger with the money re-

ceived from appellant, Blackman immediately drew out of Milliken & Co.'s bank the balance then to the credit of Blackman & Holmes, and went off with the money. If under these circumstances it is to be held that Milliken & Co. were chargeable with the amount of this check, it must be by force of a custom established, known and generally acquiesced in by all the banks at Decatur. Turner v. Dawson, 50 Ill. 85. We do not think the evidence proves the custom in the particular contended for. We must therefore conclude that appellant was justified in receiving back the check and in paying back the amount of it to Milliken & Co. This being so, appellant is not liable to appellees for the sum credited on their passbook on account of this check. The cause was tried in the circuit court without a jury, and we find the judgment to the extent of $600, unsupported by the evidence, for which reason the judgment is reversed and the cause remanded.

Reversed and remanded.